23CA1428 Mile Hi Vets v Moreno 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1428 Jefferson County District Court No. 21CV30839 Honorable Randall C. Arp, Judge Mile Hi Veterans, a Colorado nonprofit corporation, and Mile Hi Veterans Services, a Colorado nonprofit corporation, Plaintiffs-Appellees and Cross-Appellants, v. Roberta Vigil Moreno, Defendant-Appellant and Cross-Appellee. JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS Division IV Opinion by JUDGE HAWTHORNE* Johnson and Graham*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Achieve Law Group, LLC, Jerome A. DeHerrera, Aaron A. Boschee, Benjamin P. Meade, Denver, Colorado; Belzer Law, Aaron Belzer, Boulder, Colorado, for Plaintiffs-Appellees and Cross-Appellants RVM Law, LLC, Rolf von Merveldt, Denver, Colorado, for Defendant-Appellant and Cross-Appellee *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 In this civil theft action, defendant, Roberta Vigil Moreno, appeals the trial court’s judgment notwithstanding the verdict, summary judgment, and other orders entered in favor of plaintiffs, Mile Hi Veterans and Mile Hi Veterans Services.
1 Plaintiffs cross-
appeal the court’s determination of damages in its judgment notwithstanding the verdict. We affirm and remand. I. Background ¶ 2 This case arises out of a dispute over the ownership and control of a nonprofit corporation originally incorporated as the Mile Hi Chapter of the American GI Forum (AGIF). Before the dispute began, the Mile Hi Chapter purchased real estate in Denver and leased part of its parking lot to Verizon Wireless for construction of a cellular tower. The lease required Verizon to pay the Mile Hi Chapter a $90,750 lease payment in July 2021. ¶ 3 Plaintiffs allege that in September 2020, Mile Hi Chapter members voted to disassociate from AGIF and changed the nonprofit’s name to Mile Hi Veterans with the Colorado Secretary of 1 While there were other named defendants in the underlying action, they are not parties to this appeal. 
2 State.
2 Moreno alleges that Mile Hi Veterans’ disassociation from AGIF was not recognized by AGIF, so she and other former Mile Hi Chapter members, including Russell Lopez and Robert Mares, renewed the AGIF charter to reassert control over the Mile Hi Chapter’s property. ¶ 4 It is undisputed that Lopez filed documents with the Secretary of State designating himself as Mile Hi Veterans’ registered agent, changing Mile Hi Veterans’ business address to his and Moreno’s house, and changing Mile Hi Veterans’ name to “American GI Forum Mile Hi Chapter.” It is also undisputed that Moreno, Lopez, and Mares then opened a bank account using Mile Hi Veterans’ Federal Employer Identification Number (FEIN) and its former corporate name. At Lopez’ request and based on Moreno’s explanation that “we are one and the same organization,” Verizon tendered the lease payment into the newly created bank account. ¶ 5 Plaintiffs brought claims against Moreno and other defendants for fraudulent representation, civil theft, conversion, tortious interference with existing contractual relationships, unauthorized 2 Mile Hi Veterans separately created Mile Hi Veterans Services to hold title to Mile Hi Veterans’ real property. 
3 assumption of corporate powers, violations of the Colorado Organized Crime Control Act (COCCA), civil conspiracy to commit tortious acts, and aiding and abetting tortious acts, and sought a declaratory judgment that plaintiffs were the rightful owners of the bank account and its contents. ¶ 6 Before plaintiffs discovered the lease payment’s theft and filed their complete set of claims, the trial court granted a preliminary injunction requiring the defendants to relinquish access to Mile Hi Veterans’ Secretary of State filings. After plaintiffs filed an amended complaint, the court granted their motion for summary judgment on their declaratory judgment claim, concluding that plaintiffs — not Moreno and the other defendants — were entitled to the Verizon lease payment. Accordingly, the court ordered the lease payment, which had been held in the court’s registry, to be released to plaintiffs. The court granted summary judgment in favor of Moreno on plaintiffs’ claims for conversion and tortious interference with contract claims. After settling their claims against the other defendants, plaintiffs proceeded to trial against Moreno and Mares on plaintiffs’ claims for civil theft, COCCA violations, conspiracy, and unauthorized assumption of corporate powers. 
4 ¶ 7 The jury found Moreno and Mares liable for civil theft and for unauthorized assumption of corporate powers, but it awarded no damages. It found defendants not liable for conspiracy or for violating COCCA. ¶ 8 After trial, plaintiffs moved for judgment notwithstanding the verdict, asserting that the jury failed to consider the undisputed value of the lease payment when awarding damages. They argued that they were entitled to treble that amount in actual damages, or at least $200 in statutory damages. The trial court granted the motion in part, awarding $200 in statutory damages but denying the request for a higher damages award. ¶ 9 Moreno appeals and plaintiffs cross-appeal. II. Standards of Review ¶ 10 When there are no disputed facts, we review the trial court’s entry of summary judgment and judgment notwithstanding the verdict de novo. Vaccaro v. Am. Fam. Ins. Grp., 2012 COA 9M, ¶ 40; Beeftu v. Creekside Ventures LLC, 37 P.3d 526, 528 (Colo. App. 2001). We also apply de novo review to the court’s legal conclusions, including those related to standing, whether the jury was correctly instructed on the applicable law, and whether the 
5 evidence, when viewed in the light most favorable to the verdict, sufficiently supports the jury’s decision. Ferguson v. Spalding Rehab., LLC, 2019 COA 93, ¶ 7; Bedee v. Am. Med. Response of Colo., 2015 COA 128, ¶ 9; Northstar Project Mgmt., Inc. v. DLR Grp., Inc., 2013 CO 12, ¶ 14. ¶ 11 When a C.R.C.P. 59 motion for judgment notwithstanding the verdict involves disputed facts, we review the court’s ruling for an abuse of discretion. Sch. Dist. No. 12 v. Sec. Life of Denver Ins. Co., 185 P.3d 781, 786 (Colo. 2008). We also review the court’s decisions on whether to grant leave to amend the pleadings or to award costs and attorney fees for an abuse of discretion. Rinker v. Colina-Lee, 2019 COA 45, ¶ 28; Archer v. Farmer Bros. Co., 90 P.3d 228, 230 (Colo. 2004). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misinterprets or misapplies the law. Rinker, ¶ 29. III. Moreno’s Arguments on Appeal ¶ 12 Moreno challenges multiple decisions by the trial court, including its award of damages notwithstanding the verdict and entry of partial summary judgment on plaintiffs’ declaratory judgment claim. She also argues the court erred by concluding that 
6 she lacked standing, denying her motion to assert counterclaims, and instructing the jury that it had predetermined certain elements of civil theft. Finally, she challenges the sufficiency of the evidence and asserts that she is entitled to costs and fees for prevailing on plaintiffs’ COCCA claim. Considering each of Moreno’s arguments in turn, we discern no basis for relief. A. Preservation and Compliance with C.A.R. 28 ¶ 13 As an initial matter, we note that Moreno’s opening brief does not comply with C.A.R. 28(a)(7)(A), which requires an appellant to point us to the precise location in the record where each issue was raised and where the trial court ruled. This rule’s purpose “is to relieve courts from the burden of having to search records to determine whether (and, if so, how) issues [have] been raised and resolved in the trial courts.” O’Quinn v. Baca, 250 P.3d 629, 631 (Colo. App. 2010). We expect counsel to comply with the appellate rules, and we are under no obligation to search the record to determine whether each issue was properly preserved. Id. at 631-
32. But having reviewed the record, and even giving Moreno the benefit of the doubt where preservation is unclear, we are still not persuaded by the merits on any of her arguments. 
7 B. Judgment Notwithstanding the Verdict ¶ 14 Moreno argues the trial court erred by awarding plaintiffs $200 in statutory damages, notwithstanding the jury’s decision to award no actual damages, because there was no legal basis for doing so. She supports her argument with a single sentence, asserting that the court “did not make any determination that the jury verdict was unreasonable in any way.” ¶ 15 Moreno’s contention is not supported by the record and does not address the actual grounds relied upon by the trial court. In a thorough written order, the court determined that plaintiffs were entitled to statutory damages under section 18-4-405, C.R.S. 2023. That statute provides that a plaintiff “may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater, and may also recover costs of the action and reasonable attorney fees.” § 18-4-405. The court also noted that the jury ignored Instruction No. 17, which provided, “If you find in favor of the Plaintiffs, but do not award any actual damages, you shall award the plaintiff statutory damages in the amount of $200.” 
8 ¶ 16 Moreno does not address section 18-4-405 or acknowledge Instruction No. 17 in her opening brief. Nor does she explain how the cases she cites support her position. And while she argues that plaintiffs waived any objection to the jury instructions because they tendered them to the trial court, plaintiffs do not challenge the jury instructions. Their motion for judgment notwithstanding the verdict was based on their position that the jury instructions were appropriate, but that the jury ignored them. Because Moreno bases her argument on “a bald legal proposition presented without argument or development,” we will not consider it further. Barnett v. Elite Props. of Am., Inc., 252 P.3d 14, 19 (Colo. App. 2010). Instead, we conclude the court properly awarded statutory damages, as required under section 18-4-405. C. Summary Judgment ¶ 17 In granting summary judgment on plaintiffs’ declaratory judgment claim, the trial court resolved the primary dispute in this case as a matter of law. Specifically, it concluded that Mile Hi Veterans was the same legal entity as the one that originally entered into the lease agreement with Verizon. And it found no authority to suggest that a corporate entity loses its rights under a 
9 lease agreement simply because it changes its entity name. So the court concluded that plaintiffs were the sole parties entitled to the Verizon lease payment. It also concluded that Moreno and the other defendants lacked standing to assert any rights or arguments related to the lease agreement because they were not parties to it. Finally, the court declined Moreno’s request for additional discovery, noting that the question of the lease payment “has no factual dispute and is solely a question of law.” ¶ 18 Moreno argues the court erred by granting partial summary judgment. However, as with her arguments regarding the entry of judgment notwithstanding the verdict, she fails to address the substance of the court’s ruling. Specifically, she asserts that summary judgment was improper because plaintiffs failed to join necessary parties — namely Verizon and AGIF — to the action. But the trial court concluded that Moreno lacked standing to assert rights under the lease agreement because she was not a party to the lease. As discussed in greater detail below, we are unpersuaded that the trial court erred when it determined that Moreno lacked standing. And because we conclude that the court’s determination that she lacked standing to enforce the lease agreement is affirmed, 
10 such a ruling prevents her from now arguing that Verizon and AGIF should have been added as parties to the related declaratory judgment action. ¶ 19 Moreno also points to evidence that Verizon never changed the lease agreement payee to Mile Hi Veterans, but she does not explain how this evidence negates the trial court’s summary judgment. And she cites no authority to undermine the court’s finding, as a matter of law, that a corporation retains its rights after a change in corporate name, and we have found none. To the contrary, “[t]he change of a corporation’s name is not a change of the identity of a corporation and has no effect on the corporation’s property, rights, or liabilities.” Alley v. Miramon, 614 F.2d 1372, 1384 (5th Cir. 1980); see also 18 C.J.S. Corporations § 143, Westlaw (database updated May 2024) (collecting cases). ¶ 20 Despite Moreno’s arguments, whether Verizon and AGIF were named parties to the action and whether Mile Hi Veterans successfully changed its designation in the lease agreement have no bearing on the trial court’s decision to grant partial summary judgment to plaintiffs. Accordingly, we conclude that Moreno is not 
11 entitled to relief, and we reject her challenge to the preliminary injunction entered by the trial court on the same grounds. D. Standing ¶ 21 The trial court also denied Moreno’s motion for reconsideration and her motion for leave to amend her counterclaims because she lacked standing to assert those claims. Moreno argues the court’s standing determination was improper because she has been a member of AGIF since 1996 and because she is a party to this case who is alleged to have stolen the lease payment. We are not persuaded. ¶ 22 Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest. Durdin v. Cheyenne Mountain Bank, 98 P.3d 899, 902 (Colo. App. 2004). A person who is not a party to an agreement generally lacks standing to enforce that agreement. See Vallagio at Inverness Residential Condo. Ass’n v. Metro. Homes, Inc., 2015 COA 65, ¶ 51, aff’d, 2017 CO 69. While a third-party beneficiary may sometimes seek to enforce a contract, they may do so only if the original parties intended to confer a benefit on the third party when contracting. Id. at ¶ 52 (“While the intent to benefit the nonparty need not be 
12 expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both.” (quoting Harwig v. Downey, 56 P.3d 1220, 1221 (Colo. App. 2002))). ¶ 23 Moreno does not raise a meritorious challenge to the trial court’s determination that Mile Hi Veterans was the same entity formerly known as the Mile Hi Chapter. Therefore, Mile Hi Veterans was the entity described in the lease agreement with Verizon, albeit under its former name. Even if Moreno was a member of the Mile Hi Chapter when it entered the lease agreement with Verizon, she was not a member when the lease payment at issue in this case became due. Also, the lease agreement was between Verizon and the corporate entity itself, not its members. ¶ 24 Moreno points to no language in the lease agreement or any surrounding circumstances indicating that Verizon and Mile Hi Veterans intended for the lease agreement to benefit Mile Hi Veterans members, let alone former Mile Hi Chapter members. See id.; see also Everett v. Dickinson & Co., 929 P.2d 10, 12 (Colo. App. 1996) (“[I]t is not enough that some benefit incidental to the performance of the contract may accrue to the third party.”). And 
13 simply being named as a defendant in plaintiffs’ attempt to reclaim the stolen lease payment does not give Moreno a legal right to enforce an agreement to which she is not a party. Vallagio, ¶ 51. So we conclude the trial court properly determined that she lacked standing. E. Counterclaims 1. Additional Facts ¶ 25 Two and a half months before trial, Moreno filed a motion for leave to file counterclaims against plaintiffs for breach of contract (related to Mile Hi Veterans’ alleged breach of the AGIF constitution) and abuse of process. The trial court denied the motion, concluding that Moreno had previously filed and then voluntarily dismissed counterclaims that were “almost verbatim.” The court noted that Moreno’s motion was filed on the last day permitted to amend the pleadings and that Moreno failed to adequately explain why she had not brought the amended claims earlier. It further found that Moreno’s counterclaims would be futile because (1) Moreno lacked standing to assert a claim based on the AGIF constitution, and (2) the court could not find any plausible abuse of process by plaintiffs based on Moreno’s allegations. 
14 2. Discussion ¶ 26 Moreno contends that the trial court abused its discretion because her counterclaims were previously dismissed without prejudice, so she should have been entitled to bring them again. She also argues that she timely reasserted her counterclaims based on the deadline set forth by the court’s case management order. Plaintiffs argue this issue is decidedly unpreserved because Moreno did not file a reply to their detailed motion in opposition. ¶ 27 As an initial matter, we disagree with plaintiffs that Moreno’s arguments are not preserved simply because she did not file a reply to their response. Even if it was not as detailed as plaintiffs’ response, Moreno’s motion for leave to amend the pleadings by adding counterclaims presented “the sum and substance” of her arguments to the trial court. See Gebert v. Sears, Roebuck & Co., 2023 COA 107, ¶ 25 (standard for preservation). ¶ 28 Even so, we discern no error. Importantly, Moreno does not challenge the court’s alternate grounds for denying her motion. She asserts the court erred by determining that her counterclaims were untimely, but she makes no argument regarding the court’s separate conclusion that her counterclaims would be futile. 
15 “Ordinarily, a party’s failure to present a cogent argument contesting a court’s alternative basis for judgment requires us to affirm the judgment.” Lawson v. Stow, 2014 COA 26, ¶ 41. ¶ 29 We also disagree with Moreno’s arguments that her counterclaims were not prejudicial. While leave to amend a pleading is generally freely given, it may be denied based on undue prejudice to the opposing party. Sandoval v. Archdiocese of Denver, 8 P.3d 598, 605 (Colo. App. 2000). Whether a petition to amend a pleading is timely or not, “[t]he movant carries the burden of demonstrating that lack of knowledge, mistake, inadvertence, or other reason for having not stated the amended claim earlier.” Id. ¶ 30 Moreno does not explain why she sought to reassert counterclaims that she had previously dismissed, or why she waited to reassert those claims until the last possible day to do so. She also does not challenge the court’s finding that plaintiffs would be prejudiced by a likely continuance of trial and need for additional discovery. See Fisher v. State Farm Mut. Auto. Ins. Co., 2015 COA 57, ¶ 18 (we decline to address conclusory arguments). We conclude that reversal is not warranted. 
16 F. Predetermination of Elements of Civil Theft ¶ 31 Based on its summary judgment, the trial court gave the following instruction to the jury at the end of trial: I have already made certain factual and legal determinations and have entered judgment on certain aspect[s] of the parties[’] claims and defenses. Those decisions make the presentation of any evidence to prove these matters unnecessary. Those decisions make the presentation of any evidence to disprove those matters irrelevant. You must accept the following as true: 1. Plaintiff Mile Hi Veterans is the only party with legal interest in and the legal right to receive the $90,750.00 lease payment from Verizon Wireless. 2. Defendants have no legal interest in the $90,750.00 Verizon payment nor any right to it; 3. Mile Hi Veteran[s’] decision to change its corporate name from Mile Hi Chapter American GI Forum of Colorado to Mile Hi Veterans did not make Mile Hi Veterans a new entity and it did not affect Mile Hi Veterans’ rights; 4. The entity previously known as American GI Forum Mile Hi Chapter and the Plaintiff Mile Hi Veterans are the exact same legal entity and [the FEIN number as well as the Colorado Corporate Entity number belonging to the Mile Hi Chapter] both belong to Plaintiff Mile Hi Veterans; 
17 5. Defendants are not a corporation or formal business entity; and 6. Defendants did not have any legal authority to use Mile Hi Veterans[’ FEIN] or Colorado Corporate Entity Number. ¶ 32 Moreno contends the court’s instruction was improper. She asserts that each of the findings described in it was factually disputed, particularly because plaintiffs had the burden of proving that she had a criminal mental state at the time that she opened a bank account using Mile Hi Veterans’ FEIN number and received the lease payment. She argues that the court’s instructions deprived her of the right to have the jury decide whether she had the culpable mens rea required for civil theft. We disagree.
3 ¶ 33 As we have discussed, the court determined that plaintiffs were entitled to the lease payment because Mile Hi Veterans was the same entity initially described in the lease agreement. Because Moreno points to no record evidence or legal authority to refute this 3 Despite plaintiffs’ arguments to the contrary, we conclude this issue was preserved. Moreno did not specifically raise the issue of mens rea during the jury instruction conference, but she objected to the court’s legal determination that plaintiffs were the rightful owners of the lease payment. We therefore address this issue’s merits. 
18 determination, we conclude that whether Mile Hi Veterans was entitled to the lease payment was indeed a legal question. ¶ 34 To be sure, the jury was required to find that Moreno acted with criminal intent in order to convict her of civil theft. See § 18-4-
401, C.R.S. 2023 (a person commits theft when she knowingly obtains anything of value of another without authorization). But Moreno was permitted to present evidence of her mens rea to the jury. Over plaintiffs’ objection, she testified that she did not believe that she was trying to take anything that belonged to the original AGIF Mile Hi Chapter, and that she believed that the “renewed” Mile Hi Chapter was entitled to the lease payment. ¶ 35 The jury was also properly instructed on the elements of civil theft, including that the jury was required to find by a preponderance of the evidence that Moreno acted with the requisite intent. These instructions required the jury to find that Moreno “knowingly, without authorization or by deception, obtained or exercised control over the Verizon Lease Payment” and that she “did so with the intent to permanently deprive the Plaintiff(s) of the use or benefit of the Verizon Lease Payment.” So even though the court instructed the jury that Moreno was not entitled to the lease 
19 payment, the jury was required to find that Moreno acted with criminal intent. Moreno presented evidence to contradict that finding, but the jury still found that the civil theft elements were met. Because the jury was properly instructed on the law and — as discussed in greater detail below — there was evidence to support its verdict, we will not disturb it. G. Sufficiency of the Evidence ¶ 36 Moreno next contends there was insufficient evidence to support her civil theft conviction because there was no evidence that Verizon or its subcontractor determined that Mile Hi Veterans was the correct recipient of the lease payment. She argues the court’s later legal determination that Mile Hi Veterans was entitled to the lease payment cannot be imputed to her. She also challenges the sufficiency of the evidence regarding unauthorized assumption of corporate powers, arguing there was no evidence that she acted on behalf of Mile Hi Veterans because she always represented herself as part of the Mile Hi Chapter. ¶ 37 At the outset, we question whether Moreno properly preserved this issue for appeal. At the close of trial, she moved for a directed verdict on plaintiffs’ COCCA claim and other claims brought by Mile 
20 Hi Veterans Services. But she did not move for a directed verdict on plaintiffs’ civil theft claim, and her attorney specifically acknowledged that “there has been evidence of activities that could fit the definition of civil theft, I believe, under the law.” Also, Moreno did not move for a directed verdict regarding the charge of unauthorized assumption of corporate powers. Cf. In re Estate of Chavez, 2022 COA 89M, ¶ 33 (post-trial motion preserved sufficiency of the evidence challenge for appeal). ¶ 38 Even if we assume that Moreno’s sufficiency of the evidence challenge is properly before us, “[a] jury’s verdict will not be disturbed if there is any support for it in the record.” Blood v. Qwest Servs. Corp., 224 P.3d 301, 325 (Colo. App. 2009) (quoting Murphy v. Glenn, 964 P.2d 581, 584 (Colo. App. 1998)), aff’d, 252 P.3d 1071 (Colo. 2011). Plaintiffs presented evidence that Moreno encouraged Lopez to file changes to Mile Hi Veterans’ entity name and registered agent with the Colorado Secretary of State; sent meeting minutes purportedly from that entity (with a new name) to the bank where she proceeded to open a corporate account; and sent a letter to Verizon claiming to be the Interim Chairwoman of “one and the same organization” that received the original FEIN in 
21 1968. As discussed above, the trial court also properly instructed the jury that, as a legal matter, Mile Hi Veterans was the only entity entitled to the lease payment. But even without that instruction, the jury heard evidence, and plaintiffs’ attorney emphasized during closing argument, that when an entity changes its name, it does not lose its rights. ¶ 39 Viewed in the light most favorable to the jury’s verdict, see Northstar Project Mgmt., ¶ 14, we conclude the relevant evidence was sufficient to support the jury’s verdicts. H. Failure to Award Fees and Costs ¶ 40 Finally, we reject Moreno’s claim to attorney fees and costs as a prevailing party under COCCA’s fee-shifting provision. Section 18-17-106(7), C.R.S. 2023, entitles “[a]ny person injured by reason of” a COCCA violation to attorney fees and costs of investigation and litigation. (Emphasis added.) It says nothing of a defendant who is found not liable under COCCA. ¶ 41 Moreno also argues that she was a prevailing party as to “the large majority of other claims” involved in this litigation and is therefore entitled to fees. “When a case involves many claims, some of which are successful and some of which are not, it is left to the 
22 sole discretion of the trial court to determine which party, if any, is the prevailing party and whether costs should be awarded.” Archer, 90 P.3d at 231. The trial court determined that “the main thrust and contention” of the parties’ dispute was the control over the corporate entity of Mile Hi Veterans, the lease payment, and whether it was stolen by defendants. Because plaintiffs prevailed on all three of these substantive issues, we conclude the court properly exercised its discretion to determine that plaintiffs were the prevailing parties. IV. Plaintiffs’ Cross-Appeal ¶ 42 We next consider plaintiffs’ cross-appeal. Plaintiffs contend that while the trial court properly granted their motion for judgment notwithstanding the verdict, it improperly limited its damages award to $200. Plaintiffs argue that they are entitled to treble the value of the lease payment, plus pre- and post-judgment interest, under section 18-4-405. We conclude that the record supports the trial court’s exercise of discretion. ¶ 43 As discussed, the trial court instructed the jury that Moreno had “no legal interest in the $90,750.00 Verizon payment.” Regarding the elements of civil theft, the court also instructed the 
23 jury that plaintiffs had an ownership interest in the lease payment. And it instructed that, in awarding damages, the jury was required to consider the stolen property’s value among the economic losses that plaintiffs suffered as a result of the civil theft. ¶ 44 We recognize that, at first blush, the jury’s decision to find Moreno liable for civil theft but to award $0 in damages is peculiar in a case where the stolen property’s value was undisputed. Critically, however, the trial court specifically instructed the jury that it was entitled to do what it did. In Instruction No. 10, the court instructed, The fact that an instruction on measure of damages has been given to you does not mean that the Court is instructing the jury to award or not to award damages. The question of whether or not damages are to be awarded is a question for the jury’s consideration. ¶ 45 That is, while the jury was instructed on the stolen property’s value, it was also properly instructed — with no objection by either party — that it was entitled to find liability for civil damages without awarding damages at all. Its ability to do so was further underscored by Instruction No. 17, which instructed the jury to 
24 award $200 in statutory damages if it found “in favor of the Plaintiffs, but [did] not award actual damages.” ¶ 46 Considering these instructions, we conclude this case is distinguishable from the primary cases on which plaintiffs rely. In Mystic Tailoring Co. v. Jacobstein, 94 Colo. 306, 308, 30 P.2d 263, 264 (1934), the trial court awarded damages beyond the jury’s verdict because they were undisputed and “there [was] nothing further to try.” By contrast here, while the stolen property’s value was undisputed, whether plaintiffs proved actual damages was a question properly for the jury’s determination. And this is not a case like Cole v. Angerman, 31 Colo. App. 279, 282, 501 P.2d 136, 138 (1972), where “the jury . . . failed to follow the instructions.” To the contrary, the jury was instructed that the court’s predetermination of the stolen property’s value was not an instruction to award or not award damages. ¶ 47 The question the jury submitted to the court during deliberations does not require a different conclusion. Specifically, the jury asked, “Has the $90,750 been returned to the plaintiffs[?] If we want to ensure that the $90,750 is returned to Plaintiffs, do we need to note the total amount of Plaintiff damages[?]” 
25 ¶ 48 Plaintiffs argue this question evidences the jury’s confusion and its desire to award the lease payment as actual damages. But reading the jury’s question as plaintiffs suggest would require us to speculate that the jury wanted to award damages as a way to ensure the $90,750 was returned to plaintiffs. The record just as easily supports the conclusion that the jury declined to award damages because the money was already returned, or because it heeded the court’s instructions and concluded actual damages had not been proved at trial. Also, the trial court properly informed the jury that it had all the evidence it could consider and that “[r]eturn of the money is not a defense to civil theft.” As plaintiffs’ attorney appeared to concede at a bench conference, this answer accurately informed the jury of the governing law.
4 See Chavez, ¶ 48 (the fact that stolen property was eventually returned is not a defense). 4 Plaintiffs’ attorney stated that the court’s proposed answer to the jury’s question “is not only responsive to the jury but also an inaccurate statement of the law. So it’s timeless.” In context, it appears the transcript may contain a typographical error, and he was recognizing the court’s answer as accurate. But even if counsel disagreed, the court was correct that “returning funds . . . is not a defense to civil theft.” In re Estate of Chavez, 2022 COA 89M, ¶ 48. 
26 ¶ 49 In denying plaintiffs’ request for a damages award beyond $200, the trial court found it “clear . . . that the jury did decide that [Moreno was] liable for civil theft. They just did not decide that Plaintiffs suffered any actual damages nor that Plaintiffs proved their damages.” Because it is supported by the instructions given to the jury, we cannot conclude the court’s conclusion was arbitrary, unreasonable, or unfair. See Rinker, ¶ 29. Accordingly, we must affirm the court’s decision. V. Appellate Attorney Fees and Costs ¶ 50 Finally, we conclude that plaintiffs are entitled to reasonable appellate attorney fees under the civil theft statute. § 18-4-405; see also Tisch v. Tisch, 2019 COA 41, ¶ 93. Exercising our discretion under C.A.R. 39.1, we remand the case to the trial court to determine and award those fees. C.A.R. 39.1; see also Black v. Black, 2018 COA 7, ¶ 130. VI. Disposition ¶ 51 The judgment is affirmed, and the case is remanded to the trial court to determine and award plaintiffs’ appellate attorney fees. JUDGE JOHNSON and JUDGE GRAHAM concur.